FILED
2008 Feb-05  AM 08:31
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MICHELE SIMS O/B/O L.M.S., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:06-CV-01814-LSC |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner, ) | |
| Social Security Administration ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OF OPINION

I.  Introduction.

Plaintiff, Michele Sims, on behalf of her minor child, L.M.S. ("Claimant"), appeals the decision of the Administrative Law Judge ("ALJ") denying her application for Child's Supplemental Security Income ("SSI"). Ms. Sims has timely pursued and exhausted her administrative remedies and the decision of the ALJ is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Claimant was sixteen years old at the time of the ALJ's decision and he was enrolled in tenth grade at McAdory High School.  (Tr. at 17.)

Plaintiff believes that her son became disabled on January 9, 2003, due to asthma and attention deficit hyperactivity disorder ("ADHD").  *Id*. at 16.

In 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act which amended the statutory standard for determining child SSI.  *See* P.L. No. 104-193, 110 Stat. 2105.  The revised standard states that:

> [a]n individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(1).  On September 11, 2000, the SSA published the final rules implementing the act.  *See* 65 Fed. Reg. 5471.  These rules became effective on January 2, 2001.  *See id*.

When evaluating the disability of a child, the regulations prescribe a three-step sequential evaluation process.  *See* 20 C.F.R. § 416.924(a).  The first step requires a determination of whether the child is "doing substantial gainful activity."  *Id*.  If he or she is, then the child is not disabled and the evaluation stops.  *Id*.  If the child is not engaged in substantial gainful

activity, the second step requires the ALJ to determine whether he or she suffers from a severe impairment or combination of impairments. *Id*. An impairment is considered "severe" if it causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the impairments are not severe, the analysis stops. 20 C.F.R. § 416.924(a). However, if the impairments are "severe," the third step requires the ALJ to determine if one or more of the impairments meets or equals an impairment listed in Appendix 1 to Subpart P of Part 404. *Id*. If the child has such an impairment and it meets the durational requirement, the ALJ will find that he or she is disabled. *Id*. If they do not meet each of the criteria enumerated in the listings, the ALJ must decide whether the impairment or combination of impairments "functionally equals" the severity of any listed impairment. *See* 20 C.F.R. § 416.924(d).

When assessing a child's functional limitations, the ALJ considers all of the relevant factors, such as: how well the child can initiate and sustain activities, how much extra help he or she requires, the effects of structures or supportive settings, how the child functions in school, and the effects of medications or other treatments on the child's health. 20 C.F.R. §

416.926a.  To determine functional equivalence, the ALJ must evaluate the child's limitations in the following six functional areas, called domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) the ability to care for himself; and (6) health and physical well-being.  *See* 20 C.F.R. § 416.926a(b)(1)(i-vi).  An impairment, or combination of impairments, functionally equals a listed impairment if it results in either "marked" limitations in two of the previously mentioned domains or an "extreme" limitation in one domain.[1]  *See* 20 C.F.R. § 416.926a(a).

Applying this sequential evaluation, the ALJ found that Claimant has not engaged in substantial gainful activity since the alleged onset date.  Tr. at 21.  Based on the evidence presented, the ALJ concluded that his asthma and ADHD are impairments which are considered "severe" according to 20 C.F.R. § 416.924(c).  *Id*. at 22.  Nonetheless, the ALJ determined that these impairments were not attended with limitations which functionally or

---

[1] For purposes of deciding the overall limitation in the six functional domains, a "marked" limitation is one that "seriously" interferes with functioning, and an "extreme" limitation is one that "very seriously" interferes with functioning.  *See* 20 C.F.R. § 416.926a(e)(2) and (3).

medically meet or equal the severity of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. In evaluating functional equivalence, the ALJ found that Claimant had less than "marked" limitations in the domains of "acquiring and using information" and "attending and completing tasks." *Id*. at 21. However, the ALJ also concluded that Claimant did not have any other "marked" or "extreme" limitations in the remaining domains, which is necessary in order to satisfy the requirements for functional equivalence in 20 C.F.R. § 416.926a(b)(1)(i-vi). *Id*. at 22. As a result, the ALJ ruled that Claimant "has not been under a 'disability,' at any time from the alleged onset date through the date of this decision." *Id*.

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner; and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but

applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of the claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Plaintiff alleges that the ALJ's decision should be reversed or remanded because it is not supported by substantial evidence for two reasons. (Doc. 7 at 8-14.) First, Plaintiff argues that the ALJ's conclusion that "[Claimant] suffers from no marked or severe levels of impairment is contrary to the substantive evidence of record." *Id.* at 8. Second, Plaintiff submits that the "ALJ failed to properly consider all of [Claimant's] diagnosed and treated impairments" in reaching his conclusions. *Id.* at 13.

A.   ALJ's Impairment Findings.

Plaintiff contends that the ALJ's assessment of Claimant's functional equivalence is not supported by substantial evidence because the ALJ failed to properly evaluate Claimant's functioning in each of six domains prescribed in the regulations. Specifically, Plaintiff claims that the ALJ's evaluation of the domains "consisted of nothing more than listing the domains with no comment as to the evidence existing in the claim that might support or negate findings of marked or severe limitations." *Id.* at 11. Plaintiff argues that the ALJ's explanation of his findings is limited to the following statement:

> Mindful of claimant's capacity to respond adequately to the mental status questions posed by Dr. Neville, to achieve at least a low average range of intelligence and, perhaps most important, his ability to function consistently, effectively and interactively in the complex rules of his varsity football team, the undersigned concurs with the findings of the State Disability Determination Service as to the functionally equivalent limitations of the six domains.

*Id.* (*quoting* Tr. at 21). Plaintiff submits that this explanation shows that the ALJ has denied the claim based on an incomplete evaluation performed by non-treating source which contradicts the diagnoses and treatments from both treating psychiatrist Dr. Elrefai and Claimant's teachers who completed forms indicating marked to extreme limitations in multiple areas of functioning that correspond to the six childhood functional domains. *Id.* at 12.

Based on the Court's review of the record, it is clear that while the ALJ cited the findings of the State Disability Determination Service, with which he concurred, he also relied on the opinions of Claimant's examining and treating medical sources.

The ALJ noted that Claimant was evaluated by clinical psychologist Dr. Boll in response to an earlier application for benefits, and Dr. Boll noted

that claimant was scheduled to see a psychiatrist because he was "fidgety." Tr. at 18. Dr. Boll described Claimant as actively resistant and non-compliant, rather than "fidgety." *Id*. He considered that Claimant was the starting quarterback on his local football team, indicating his capacity to carry out a variety of complex tasks, both physical, mental, and interpersonal, which substantially exceeded that which was demonstrated on his mental tests. *Id*. The mental test performed indicated a Full Scale I.Q. of 49, which Boll determined was due to a total lack of effort. *Id*.

Claimant was administered a second psychological evaluation on August 2, 2004, by Dr. Neville. In this evaluation, Claimant indicated that the medication started on June 30, 2004, helped him to stay calm, and his mother added that now he "goes ahead and completes what he starts." *Id*. at 18, 277. On his mental status examination, Dr. Neville noted that Claimant was well groomed, adequately cooperative, and a rapport was established. *Id*. at 19, 278. Plaintiff had an average activity level and focused "well enough" during the evaluation. *Id*. at 278. Dr. Neville could easily understand him and Claimant had no obvious problems understanding questions or responding to them. *Id*. Claimant smiled and laughed easily at

appropriate times, and his mood and affect appeared stable and appropriate. *Id.* He could also calculate simple addition, subtraction, multiplication, and division problems. *Id.* Claimant had no problems counting and spelling backwards and Dr. Neville noted that his memory was adequate. *Id.* Claimant described extensive levels of activity to Dr. Neville, including: bathing, dressing, and grooming himself; household chores including washing dishes, sweeping and mopping floors and taking out the trash. *Id.* Claimant stated that he cooked simple dishes, enjoyed video games, had a girlfriend, and attended church occasionally. *Id.* at 279. Dr. Neville determined that Claimant had a low average range of intelligence with a Full Scale I.Q. of 83.[2]

Dr. Neville's diagnostic impression was that Claimant had Oppositional Defiant Disorder (ODD), Attention Deficit Disorder/Hyperactivity Disorder (ADHD), and asthma. Dr. Neville felt like these conditions had mild to moderate symptoms, which were likely to improve with continued outpatient mental health treatment. *Id.* at 19, 280.

---

[2] Dr. Neville noted that there was a score of 49 from a 2002 intelligence test which Dr. Boll, who administered the test, felt was perhaps due to malingering. (Tr. at 19, 196-98, 279.)

Other evidence from Claimant's treating sources also supports the ALJ's findings. Although Plaintiff appears to rely on Dr. Elrefai's opinion as supportive of Claimant's disability, when read in context, this evidence shows otherwise. Dr. Elrefai initially evaluated Claimant in June 2004. *Id.* at 300-04. Prior to that visit, Claimant had no previous psychological treatment history. *Id.* Claimant complained of an inability to focus or finish tasks. *Id.* Dr. Elrefai noted that Claimant did not appear to be in acute distress and he denied being depressed. *Id.* at 301. He was calm and somewhat fidgety. *Id.* at 301-02. Dr. Elrfai diagnosed ADHD with a 75 Global Scale of Functioning (GAF). *Id.* at 304. Such a GAF denotes transient symptoms with no more than slight impairment in social, occupational, or school functioning. *See American Psychiatric Ass'n. Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 1994 revised) (DSM-IV).

By October 2004, Dr. Elrefai described Claimant as improved in terms of school grades (from F's to B's and C's), behavior, and social interaction. *Id.* at 294. The doctor noted that he was stable and his mother and his school also recognized the improvement in his behavior. *Id.* Dr. Elrefai stated that Claimant was doing well in his daily activities and his

medications were effective and did not generate any side effects. *Id.*

On February 2, 2005, Plaintiff was hospitalized for aggressive behavior and suicidal threats.[3] *Id.* at 310-402. Claimant responded well to treatment and by discharge, he had improved both his mood and behavior. *Id.* at 313. However, the hospital recommended that he see his psychiatrist for medication management. *Id.*

Dr. Elrefai saw Claimant again on March 30, 2005. *Id.* at 293. According to Dr. Elrefai, he was doing fairly well both in school and at home. *Id.* During the visit, Claimant reported no side effects to his medication and Dr. Elrefai noted that his mood was stable. *Id.* Dr. Elrefai also indicated that Plaintiff claimed that Claimant's medication (Metadate) wore off after school and as a result, most of his problems were at home. *Id.* Dr. Elrefai added Wellbutorin and Ritilin to Claimant's medication list. *Id.*

Dr. Elrefai saw Claimant a final time in July 2005. *Id.* at 291. His mother said that he was doing well and that "as long as he is on his medicine

---

[3]According to Claimant's testimony, he became upset because a cell phone was lost and he blew it out of proportion. (Tr. at 418.)

he is fine." *Id.* Claimant had been promoted to tenth grade, he was not depressed and experienced no side effects from his medications. *Id.* Dr. Elrefai noted a decrease in rebellious behavior patterns, a stable mood, better communication with the family, and a positive attitude about being involved with sports. *Id.*

Claimant also testified at the September 2005 hearing that his Metadate and Ritalin helped him concentrate and focus on his work. *Id.* at 414. He was in regular classes but was taken out when he needed extra help and he claimed that he has friends. *Id.* at 413-15. His mother admitted that the Wellbutrin helped somewhat and that he was doing okay on the football team. *Id.* at 429.

The ALJ is not required to cite to particular regulations or cases or to use particular phrases or formulations as long as the court can determine what statutory and regulatory requirements the ALJ did in fact apply. *See Jamison v. Bowen,* 814 F.2d 585, 588-589 (11th Cir. 1987). In this case, the ALJ fully described the standards involved and the evidence upon which he relied in reaching his conclusions. The Court therefore finds that substantial evidence supports the ALJ's findings regarding Claimant's impairments.

Finally, Plaintiff incorrectly argues that the ALJ failed to give proper weight to statements made by Claimant's teachers, who indicated that he had marked to extreme limitations in multiple areas. *See* Tr. at 150-60. These statements were given outside of the relevant time period because they were made in July 2002, and Plaintiff was previously denied benefits in January 2003. For this action, the proper inquiry is whether Claimant was disabled on or after the date of application for benefits, which was on May 10, 2004. *See* 20 C.F.R. § 416.335. Based on the evidence described herein, for the period under consideration, Claimant's treating and examining sources have reported a far more positive description of Claimant's functioning. The ALJ did not err in failing to specifically discuss his rationale for rejecting the teacher's statements regarding Claimant's limitations.

B.   Consideration of All Diagnosed and Treated Impairments.

Plaintiff also argues that the ALJ did not properly consider that Claimant was diagnosed with learning disabilities and depression, as established by school testing and noted by DSS evaluators, in determining Claimant's severe impairments.

The Eleventh Circuit has held that the ALJ must consider the combined effects of all impairments in evaluating disability. *Walker v. Bowen,* 826 F.2d 996, 1001 (11th Cir. 1987) (finding that "[i]t is the duty of the . . . [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled"). When a combination of impairments exists, a Claimant may be found disabled even though none of the individual impairments by itself would be disabling. *See Caulder v. Bowen,* 791 F.2d 872, 880 (11th Cir. 1986). The Eleventh Circuit has also held that remand is required when "an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." *Vega v. Massanari,* 265 F.3d 1214, 1220 (11th Cir. 2001), citing, *Marbury v. Sullivan,* 957 F.2d 837, 839-40 (11th Cir. 1992).

"[T]he mere existence of . . . impairments does not reveal the extent to which they limit . . . ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart,* 405 F.3d 1208, 1213 (11th Cir. 2005) (*citing McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1988). In order for an impairment to be considered severe, it must

significantly limit the Claimant's ability to do basic work activities and meet the durational requirement. *See* 20 C.F.R. § 404.1520(c).

The ALJ's decision that Claimant's learning disabilities and depression were not "severe" impairments is substantially supported by evidence in the record. The record reveals that the ALJ considered not only the objective medical evidence related to his alleged depression and learning disabilities, but also Plaintiff's subjective allegations of impairment, in reaching his conclusions.

Claimant was hospitalized in February 2005, and the discharge diagnoses were ADHD and depression. (Tr. at 313.) However, he responded well to treatment and by discharge had improved in mood and behavior. *Id*. When Dr. Elrefai saw Claimant on March 30, 2005, he was doing fairly well both in school and at home. *Id*. at 293. While Claimant's mood was stable, his mother thought he was a little depressed and he was having some problems at home. Dr. Elrefai adjusted his medication and in July 2005, he was doing well. *Id*. at 291. According to Claimant's mother "as long as he is on his medicine he is fine." *Id*. The ALJ properly considered all of Claimant's impairments, whether severe or not severe, in assessing his

functional capacity and the ALJ's determination is supported by substantial evidence.

IV. Conclusion.

Upon close review of the administrative record, and considering all of Plaintiff's arguments, the Court finds that the ALJ's decision is supported by substantial evidence. A corresponding order will be entered contemporaneously with this Memorandum of Opinion.

Done this 4th day of February 2008.

```
                          _____
                                 L. SCOTT COOGLER
                          UNITED STATES DISTRICT JUDGE
                                                  153671
```